UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES E. PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-02184-SEB-CSW |
| | ) | |
| REAGAL Warden, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS' PARTIAL
## MOTION FOR SUMMARY JUDGMENT

Plaintiff James E. Phillips, an inmate at the Indiana Department of Corrections, alleges that twenty-six defendants subjected him to cruel and unusual conditions of confinement in violation of the Eighth Amendment and in retaliation for his previous civil case filings in violation of the First Amendment while he was incarcerated at Pendleton Correctional Facility ("PCF"). Dkt. 2. Defendants have moved for partial summary judgment. Dkt. 50. Mr. Phillips has responded, and the defendants have replied. The motion is now ripe for ruling. For the reasons below, the defendants' motion for summary judgment, dkt. 50, is **GRANTED**.

### I.
### Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because

those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 572-73 (7th Cir. 2017).

Here, Mr. Phillips' response to the defendants' summary judgment motion includes a section titled "Facts Not in Dispute and Argument Statement." Dkt. 61 at 7. However, the response was not verified, nor does it support any of the alleged material facts with citations to the record other than sparse 'catch-all' citations to almost all of Mr. Phillips' nearly 200 pages of grievance and court filing exhibits. *Id*. at 4, 5, 6, 10. Accordingly, the facts alleged in the defendants' statement of material facts not in dispute are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f).

## II.
## Factual Background

Because defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Phillips and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. Parties and Claims

At all relevant times, Mr. Phillips was an inmate incarcerated at Pendleton Correctional Facility. Dkt. 51-1 at 12 (Phillips' Deposition).

After screening the complaint, the Court allowed Eighth Amendment and First Amendment retaliation claims to proceed against all twenty-six named defendants in Mr. Phillips' complaint. Dkt. 14.

All defendants were employed by the Indiana Department of Corrections at PCF. Dkt. 2 at 1-2, 18, 19. The named twenty-six defendants and their titles are as follows: 1) Dennis Reagle, Warden of PCF; 2) Smith, Executive Assistant at Pendleton; 3) Investigators with the PCF Office of Investigations and Intelligence ("OII"), Alicea, Cochran, and Ruiz; 4) Captain Boldman; 5) Lieutenant Pfleeger; 6) Counselor Goodnight; 7) Bishop and Davis, Property Officers at PCF; 8) Commissary Clerk Lyons, 9) Grievance Specialists Conyers and Watson; 10) Litigation Liaison Wargny; 11) Disciplinary Hearing Officers Miller and McDonald; and 11) Officers Canfield, Carter, Downs, Edmonds, Peters, Shaw, and Terry. *Id.*

### B. Mr. Phillips' Previous Civil Action

On June 24, 2021, Mr. Phillips filed a complaint alleging constitutional violations related to extreme temperatures at PCF against five defendants. *See Phillips v. Pendleton Correctional Facility et al.,* 1:21-cv-01876-JPH-KMB (S.D. Ind.), Dkt. 1. The Court screened through Mr. Phillips' Eighth Amendment conditions of confinement claims against four defendants: Warden

Reagle, Captain Boldman, Lt. Pfleeger, and Property Room Manager Davis. *Id*. at Dkt. 8. On July 8, 2022, all defendants filed for summary judgment in that matter. Dkt. 40. Mr. Phillips alleges that directly after this filing, all defendants in this current action began retaliating conspiratorially and 'as a collective' against him to prevent him from taking action or filing responses in that case. Dkt. 51-1 at 24-25.

On September 6, 2022, Mr. Phillips filed his own motion for summary judgment in *Phillips v. Pendleton Correctional Facility et al.,* and he also successfully filed a subsequent response to the defendants' motion for summary judgment. 1:21-cv-01876-JPH-KMB (S.D. Ind) at Dkt. 55.

### C. Relevant IDOC Policies

It is standard security protocol at PCF that all inmates are subject to cell searches on a regular basis and at any time to locate and eliminate contraband within the prison. Dkt. 51-6 at 2. Similarly, it is standard practice for inmates to be restrained in shakedown booths while a cell search is being conducted so that prisoners do not interfere with the search or assault staff during the shakedown. *Id.*

During strip searches, PCF procedure requires that inmates bend over and manually separate their buttocks to enable staff to visually search an inmate's rectal cavity for potential contraband. *Id.*  If inmates refuse or do not consent to a body cavity search, they are escorted to a 'dry cell' or a cell that does not have plumbing or facilities. *Id.* at 3. These cells do not have toilets or plumbing to prevent inmates from destroying or disposing of hidden contraband. *Id.*

Generally, surveillance cameras were present in the common areas of PCF, and OII agents and PCF staff did not install cameras in individual inmate cells. Dkt. 51-9 at 3.

### D. Claim 1: July 6, 2022, Searches and Dry Cell Placement - Cochran, Alecia, and Ruiz

On July 6, 2022, OII Investigators Cochran, Alicea, and Ruiz conducted a routine search of Mr. Phillips' cell for contraband. Dkt. 56-1 at 1-2. During the search, Mr. Phillips refused to submit to restraints per PCF protocol and refused to submit to a body cavity search. *Id.* at 2. As a result, he was placed in a dry cell until he agreed to submit to the search. *Id.* During the cell search, OII Investigator Ruiz found a 22.5-inch metal strip underneath Mr. Phillips' mattress, and as a result, he incurred four total conduct violations for the contraband and refusing orders. *Id.* at 3. Mr. Phillips believes that the investigators planted the weapon that was recovered in his cell that day. Dkt. 51-1 at 34. After the weapon was discovered, Mr. Phillips was then moved to restrictive housing, where he remained for more than a year. *Id.* at 35.

### E. Claim 2: December 2022 Cell Search – Cochran

Prior to the December 2022 search, Mr. Phillips told OII Investigator Cochran that he would be suing him and filing grievances against him for "the act of retaliation lawsuit for doing those illegal cell searches [in July of 2022]….and for fabricating those untrue conduct reports." Dkt. 51-1 at 37. In December of 2022, Investigator Cochran conducted a cell search of Mr. Phillips' cell. Mr. Phillips alleges that this act was retaliatory because "there's eight to nine guards working in the cellhouse who could have done that, to where he could have just made a phone call…so why would he personally -you see what I'm saying?" *Id.* at 37. Mr. Phillips was also strip searched and required to perform a body cavity search that day; however, no contraband was recovered, and he suffered no deprivation. *Id.* at 38.

### F. Claim 3: Protective Custody - Peters

Mr. Phillips testified that, during an unspecified time, Officer Peters told him to enter protective custody so that Mr. Phillips could be housed in G-House directly under the custody

and influence of Captain Boldman, Lt. Pfleeger, and Property Manager Davis with the intention

of intimidating him. Dkt 51-1 at 69-70. Mr. Phillips did not ever allege that he was actually forced

or requested to be put under protective custody during any relevant time period. *Id.*

### G. Claim 4: July 21, 2022, Search and Conduct Report – Edmonds, Canfield, Shaw, Konkle, and Gray

On July 21, 2022, a non-party officer was dispatched to remove Mr. Phillips' drapes he

had installed over his cell door and perform a cell search. Dkt. 51-7 at 1. The officer then began

knocking the drapes down and ordering Mr. Phillips to submit to mechanical restraints. *Id.* Instead

of complying, Mr. Phillips continued to try to reinstall the drapes. *Id.* After numerous commands

to submit to restraints without compliance, the officer deployed OC spray. *Id.* Mr. Phillips then

submitted to the restraints, and Officers Gray, Canfield, and Edmonds escorted him to the medical

station. *Id.* Once he was removed, the officers searched Mr. Phillips' cell and discovered an 11-

inch homemade metal weapon underneath a blanket on Mr. Phillips' bed. *Id.* He received a

writeup for possession of a weapon. Dkt. 51-5 at 49. Mr. Phillips alleges that he believes the

officers planted the weapon in his cell that led to his disciplinary charge. *Id.* at 26-27, 35-36. Mr.

Phillips, however, was not present in the cell at the time of the alleged misconduct. *Id.*

### H. Claim 5: Personal Property Seizure Claim – Bishop, Davis, Morados, Goodnight, Boldman, and Pfleeger

Mr. Phillips testified that later on July 21, 2022, after his cell was searched and he was

sprayed, Property Officer Davis conspired with Sgt. Morados to withhold Mr. Phillips' personal

property from him with the intent of preventing him from responding to his legal deadlines in his

other civil case. Dkt 51-1 at 16-17, 76. He also alleges that other IDOC employees participated

in this conspiracy including Captain Boldman and Lt. Pfleeger. *Id.* at 16-17. Mr. Phillips then

wrote to Property Officer Davis, Goodnight, and Sgt. Morados to request his property be returned;

however, they did not respond. *Id.* at 74. He eventually filed a preliminary injunction and states that during a September 23, 2023, teleconference for another case, the defendants agreed to return his items but still failed to do so. *Id.* at 75. As proof of this seizure, Mr. Phillips designated as evidence to his response to the defendants' summary judgment motion, "September 23, 2022, Emergency Teleconference Transcripts;" however, he has provided no such documentation within this filing, Dkt. 62 at 2.

### I.   Claim 6: Mr. Phillips' Request for Copies – Goodnight

Mr. Phillips testified that when Counselor Goodnight was his counselor in G-House, he would often refuse to make copies for him. Dkt. 51-1 at 66.  Further, when Counselor Goodnight would make copies, the copies would contain numerous typos, and he failed to provide Mr. Phillips the grievances he requested. *Id.*

### J.   Claim 7: Unsafe Cell Assignments - Smith

Mr. Phillips testified that Executive Assistant Smith purposefully moved him to specific cells and around specific defendants and inmates who were targeting him for retaliatory purposes. Dkt. 51-1 at 78-79. He provided no other identifying information regarding this claim or the identifying information of any inmates who allegedly were targeting him.

### K.  Claim 8: Fraudulent Charges from Mr. Phillips' Trust Account - Lyons

Mr. Phillips alleges that Defendant Lyons was manipulating his debt balance and taking excess monies from his offender trust account via fraudulent charges.[1] Dkt. 51-1 at 47. However, Commissary Clerk Lyons had no access or involvement in the control, management or oversight of inmate trust accounts or inmate funds, and she was unable to make changes or modify existing orders. Dkt. 51-8 at 2-3. All these powers were managed by the Inmate Trust Department of

---

[1] Mr. Phillips asserts he brought similar claims under cause no. 1:23-cv-00623-SEB-MKK alleging the same conduct. Dkt. 51-1 at 47. That case was dismissed at screening.

Indiana Department of Correction, a completely separate division that did not employ Commissary Clerk Lyons. *Id.*

### L. Claim 9: Surveillance Devices in Mr. Phillips' Cell - Edmonds, Cochran, Ruiz, Alecia and Canfield

Mr. Phillips claims OII Investigators Cochran, Ruiz, Alicea and Officer Canfield placed surveillance devices in his cell to spy on him. Dkt. 51-1 at 79. Mr. Phillips discovered that these defendants were surveilling him because "I would do or say things in my cell that there's no possible way for the defendants to know without me telling them or disclosing myself…and they prove it by, you know what I mean, by doing everything that I said that I was doing in my cell without them possibly not being able to know…" *Id.*

### M. Claim 10: Frivolous Conduct Violations - Edmonds, Cochran, Bishop, Shaw, Ruiz and Alecia

From July 6, 2022, to October 6, 2023, Mr. Phillips incurred and was found guilty of fifteen conduct violations. Dkt. 51-5 at 5-8. Mr. Phillips states that all of these conduct reports were frivolous, fabricated, and untrue. Dkt. 51-1 at 36. He further alleges that these conduct reports were used to prevent him from filing motions in his other civil cases. *Id.*

Mr. Phillips testified in detail regarding only three specific conduct reports. The first involved the instance detailed as 'Claim 4' with Officers Gray, Canfield, and Edmonds where Mr. Phillips alleges that he believes the officers planted the weapon in his cell that led to a possession of a weapon' charge. *Id.* at 26-27, 35-36. Mr. Phillips filed a habeas action pursuant to this disciplinary proceeding, and the Court granted his petition. *Phillips v. Warden,* 1:22-cv-02181-MPB-MKK. The other two reports Mr. Phillips described were related to Officer Bishop discovering contraband in Mr. Phillips' property on October 3, 2022. Dkt. 51-1 at 76-77, 51-5 at 83, 89.

### N.  Claim 11: Determination of Guilt – Miller and McDonald

Mr. Phillips alleges that Disciplinary Hearing Officers Miller and McDonald improperly found him guilty on at least ten frivolous conduct reports by ignoring proof of his innocence and relying on conduct reports generated by staff. Dkt. 51-1 at 36, 53-55. He names three separate instances of alleged retaliation related to these disciplinary proceedings:

Mr. Phillips testified that on July 21, 2022, Officers Edmonds, Conkle, and Canfield let another inmate who had previously threatened Mr. Phillips out of his cell range to brandish a weapon towards Mr. Phillips and walk away. Dkt. 51-1 at 26-28.  Then, the officers planted a weapon in his cell and maced him. *Id*. Mr. Phillips states that the video footage of this incident would have proved his innocence, but it was not considered at the hearing by Hearing Officers McDonald and Miller. *Id.* The disciplinary documentation reflects that Mr. Phillips did request this video footage as evidence, and it was reviewed by Sgt. Miller before it was forwarded to OII for further investigation. Dkt. 51-5 at 54. Sgt. Miller recapped the video evidence in a written report and did not find that it showed any evidence that the weapon was planted. *Id*. at 52.

For the two other incidents, Mr. Phillips alleges that the Disciplinary Hearing Officers disregarded evidence of the G-House personal property policy when he was accused of two conduct violations related to contraband possession. Dkt. 51-1 at 75-77. On October 3, 2022, Mr. Phillips was charged with conduct violations for Possession of Intoxicants and Engaging in Unauthorized Financial Transactions. Dkt. 51-5 at 78, 86. For the possession charge, Mr. Phillips was alleged to be in the possession of two rolling papers covered with intoxicants, to which he responded by writing on the violation notice, "I was going to smoke tobacco with these" and requesting a continuance of the hearing to further review G-house policy. *Id.* at 78, 83. For the other charge, Mr. Phillips was also found to be in possession of an address book which contained

a list of various Cash App transactions. *Id.* at 89-93. Mr. Phillips alleges this book was planted by officers. *Id.* at 86. After the continuance was granted, Mr. Phillips was eventually found guilty of both charges. *Id.*

### O. Claim 12: Spraying of Chemicals in Mr. Phillips' Cell – Conyers, Cochran, Edmonds, Canfield, Terry, Downs and Morado

Mr. Phillips overheard multiple defendants saying that they were going to spray chemicals in his cell, and then he smelled chemicals which caused him to become sick. Dkt. 51-1 at 50-51. Mr. Phillips alleges that Cochran, Edmonds, Canfield, Terry, Downs, and Morados all sprayed his cell with something he believed smelled like feces. *Id.* at 51, 53. On August 13, 2022, Mr. Phillips submitted a grievance stating:

> Administration and offenders are spraying chemicals that smell like human feces and are spraying chemicals that make me sick because I have to breath them in and they come in thru my nose and in my mouth which make me sick. I've seen offenders and officers on my range and other ranges above me doing this and the offenders are encouraged and allowed to do this as well as the officers because all have a problem with me for whatever reason...Please view camera footage on IC 3C, 5C Ranges for HH on 9/13/22 and my date prior to this incident and you'll see what I'm saying is factual and true.

Dkt. 51-10 at 9 (errors in original).

On October 13, 2022, Mr. Phillips again submitted a similar grievance stating that unnamed officers were spraying chemicals both through the vents and in front of his cell. *Id.* at 20. He alleges that this exposure was an act of retaliation for his previously filed complaint against the facility. *Id.*

Warden Reagle testified that the only chemicals sprayed during that time were a diluted germicide solution that was sprayed in inmate cells during cleanup days and diluted bleach which was applied to contaminated cells for general cleaning or sanitation purposes. Dkt. 51-9 at 2. These chemicals were not sprayed in a manner that jeopardized inmate safety. *Id.* Grievance

Specialist Conyers responded to Mr. Phillips' grievance from October and confirmed that cleaning solutions were provided to inmates to clean their cells. Dkt. 51-10 at 19.

### P.  Claim 13: Video Preservation Grievance – Conyers and Reagle

On November 17, 2022, Mr. Phillips filed a grievance against Litigation Liaison Wargny stating "I have requested video footage to be preserved and facility video surveillance officers C. Wargny is not preserving video footage I'm requesting nor responding to my attempts at trying to get that service provided to me and for me. This is an act of retaliation against me for having civil complaint against facility and this affect[s] my mental health in a negative way." Dkt. 51-10 at 21. Although Mr. Phillips previously wrote in his August 2022 grievance "Please view camera footage on IC 3C, 5C Ranges for HH on 9/13/22 and my date prior to this incident and you'll see what I'm saying is factual and true," he had not formally requested the footage at that time. Dkt. 51-10 at 9.

Litigation Liaison Wargny responded to the grievance stating that she had not received any requests from Mr. Phillips to preserve footage and that to respond to a request, Mr. Phillips must provide information about the dates and time frames for the video footage he requested. Dkt. 51-10 at 22. Mr. Phillips responded, "I don't agree" and then requested footage from a separate December 14, 2022, incident and, for the first time, footage from the July 21, 2022, in the body of his appeal. *Id.* at 24. Warden Reagle replied that Litigation Liaison Wargny had already saved the December footage pursuant to IDOC protocol, but the July footage was no longer available. *Id.* This grievance was signed by Warden Reagle, but Mr. Phillips did not mention retaliation within the body of this grievance appeal. *Id.*

### Q. Claim 14: Mr. Phillips Grievance Claims related to his PREA Investigation – Unknown

Mr. Phillips testified that on multiple occasions, Terry, Downs, and Morado made

comments to him related to the size of his genitals. Dkt. 51-1- 42-43. In his deposition, Mr. Phillips stated that as a result of these comments, he filed a Prison Rape Elimination Act ("PREA") complaint against these three defendants, but that his complaint did not result in any sort of relief or investigation. *Id.* However, the only PREA complaint ever submitted by Mr. Phillips was against a non-party officer, Officer Brogan. Dkt. 51-10 at 33. This complaint was investigated, responded to, and eventually dismissed. *Id.* at 32.

### R. Claim 15: Failure to Respond or Investigate Plaintiff's Grievances – Conyers, Watson, and Wargny

Mr. Phillips testified that Grievance Specialists Conyers and Watson and Litigation Liaison Wargny never responded to his grievances or offered any relief for his grievances. Dkt. 51-1 at 24. During the time period in question, Mr. Phillips filed more than 40 grievances, many of which did receive responses. Dkt. 51-10 at 12-50.

Mr. Phillips states that, at various times, every named defendant told him verbally that they were specifically retaliating against him because of his previous lawsuits he had filed. Dkt. 51-1 at 21. Although Mr. Phillips alleges that all defendants conspired to retaliate against him with the intention of preventing him from responding to motions and filings in his other civil cases, during the time period at issue, Mr. Phillips submitted more than fifteen court filings and survived summary judgment in the case *Phillips v. Reagle*. Dkts. 51-1 at 22-23, 51-4 at 5-12.

### S. Mr. Phillips' Eighth Amendment Claims – All Defendants

Mr. Phillips broadly alleges in his deposition, "I was subjected to cruel and unusual punishment and delivered indifference and subjected to hazardous and dangerous conditions in circumstances and conditions of confinement."(sic) Dkt. 51-1- at 60. When asked to detail the specifics of the conditions he alleges were unconstitutional, he simply stated "I just provided it, and I just answered that question to the best of my knowledge. That's all you're going to get from

12

me. Next question." *Id.* at 61. His allegations related to his Eighth Amendment claims stem namely from his contention that he was subjected to First Amendment retaliation from the defendants which in turn subjected him to cruel and unusual punishment. *Id.* at 66.

### III.
### Discussion

As an initial matter, summary judgment is **GRANTED** as to all Eighth Amendment claims because Mr. Phillips has failed to articulate his claims with any particularity. Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind — that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720.

Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008). Mr. Phillips grounds his Eighth Amendment claims in general legal assertions and phrases that provide no particularity as to the conditions he finds unconstitutional. Mr. Phillips is the nonmoving party, so he receives "the benefit of conflicting evidence and reasonable inferences." *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). That said, he must "produce evidence sufficient to establish [the] element[s] essential to" his claim. *Id.* As the defendants' facts have

13

been admitted without controversy, no reasonable juror could find that any of the defendants violated Mr. Phillips Eighth Amendment rights. Accordingly, summary judgment must be **GRANTED**.

### A.  Mr. Phillips' First Amendment Claims

To succeed on his First Amendment retaliation claims against each defendant, Mr. Phillips must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) he engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in each defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendants to show that the deprivation would have occurred even if Mr. Phillips had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If he can make that showing, the burden shifts back to Mr. Phillips to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

Defendants do not dispute that Mr. Phillips engaged in protected First Amendment activity by filing his previous civil actions and numerous grievances, so the Court focuses on the second and third elements. After analyzing each defendant who had minimal personal involvement, the Court analyzes each First Amendment claim in turn.

### B.  Defendants with Little or No Personal Involvement

Mr. Phillips broadly alleges that Warden Reagle retaliated against him and subjected him to unconstitutional conditions of confinement because "he was the previous defendant in case 0176. And, by that time, he was aware of everything that was going on. He was a previous defendant." Dkt. 51-1 at 56-57. Mr. Phillips does not contest that the Warden never took any adverse actions against him specifically; however, he testified that he believed that the Warden

was liable because he had general knowledge of his complaints due to the numerous letters Mr. Phillips wrote him while in solitary confinement. *Id*.

But mere "knowledge of a subordinate's misconduct is not enough for liability." *Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012) (en banc).  Indeed, "inaction following receipt of a complaint about someone else's conduct is [insufficient]." *Estate of Miller by Chassie v. Marberry*, 847 F. 3d 425, 428 (7th Cir. 2017); *see Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("[The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor . . . and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right.").  Warden Reagle's signature on Mr. Phillips' December 2022 grievance response is the only evidence that the Warden had any knowledge of Mr. Phillips' difficulties at PCF. Dkt. 51-10 at 24.  And even this grievance does not discuss any alleged retaliation or continuing pattern of harm, and it was resolved pursuant to PCF policy. *Id.* Because the record is devoid of any evidence that Warden Vanihel is liable for any First Amendment violation, summary judgment is granted in his favor.

Further, although Mr. Phillips brings claims against Officer Conkle for alleged wrongdoing related to his falsified conduct reports, the uncontested record shows that Officer Conkle was not ever involved in the named incidents Mr. Phillips claims as retaliatory acts. Dkts. 51-7 at 1, 51-5 at 49-52.  In fact, in all 118 of the defendants' pages of evidence detailing Mr. Phillips' disciplinary history and conduct reports, Officer Conkle is not mentioned in a single incident. Dkt. 51-5.  A review of all "[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal

quotation omitted). Accordingly, summary judgment is **GRANTED** for Warden Reagle and Officer Conkle due to their lack of personal involvement.

### C. Cell and Body Search Claims - Claims 1, 2, and 4

Here, summary judgment is appropriate for each of these three claims because the three cell searches and body cavity searches were not sufficiently adverse to "likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). "[W]holly random searches are essential to the effective security of penal institutions." *Hudson v. Palmer*, 468 U.S. 517, 529-30 (1984); *see also West v. Kingsland*, 679 F. App'x 482, 486 (7th Cir. 2017) (routine activities like cell searches are not adverse actions) *and Griffin v. Evans*, No. 1:19-cv-00882-JPH-MPB, 2021 WL 4034876, at *14 (S.D. Ind. Sep. 2, 2021) ("Because prison officials can search an inmate's cell at any time, such searches are not likely to deter inmates from exercising their First Amendment rights.").

Mr. Phillips cites three searches as evidence of his First Amendment retaliation claims, two in July of 2022 and one in December of 2022. For two of his claims, Mr. Phillips suffered no harm or deprivation other than the confiscation of contraband or the search itself. These incidents do not rise to the level of a deprivation under the First Amendment. His third claim involved an incident where he was sprayed with OC spray for failing to comply with officer orders and was found to be in possession of a weapon. Being assaulted in response to engaging in First Amendment activity could deter an inmate of ordinary firmness from engaging in that activity. But the uncontested evidence shows that the officers only resorted to OC spray after Mr. Phillips repeatedly refused to follow orders. Officers may use OC spray to subdue a recalcitrant inmate. *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). There is no evidence that they sprayed him for any reason other than his refusal to obey orders, and there is no evidence Mr. Phillips was otherwise harmed. Dkt. 51-7

at 1; cf. *Benson v. Arnold*, 2:19-cv-00491-JRS-DLP, 2022 WL 377251, at *2 (S.D. Ind. Feb. 8, 2022) (denying summary judgment on retaliation claims premised on cell search where inmate's property was destroyed and his knee brace was torn).

The uncontested evidence confirms that random cell searches were the norm at PCF, and the body cavity search performed by the officers on Mr. Phillips was consistent with prison protocol. Dkt. 51-6 at 2-3; *Hudson*, 468 U.S. at 529-30.. (). Accordingly, the Court concludes the first two searches were not sufficiently adverse to deter a person of ordinary firmness from engaging in First Amendment activity, and that, with respect to the third search, the officers' use of OC spray was due to Mr. Phillips' refusal to obey orders rather than a retaliatory motive. The defendants' motion for summary judgment on these claims is therefore **GRANTED**.

### D. Claim 3: Protective Custody Claim

Mr. Phillips does not present sufficient evidence that Officer Peters encouraging him to enter protective custody was either based in retaliatory animus or caused him to suffer a depravation that would deter First Amendment activity, and accordingly, summary judgment is appropriate as to this claim. Although Mr. Phillips alleges that Officer Peters wanted him to enter protective custody on G-House, it is uncontested that Mr. Phillips did not ever actually enter said protective custody. Dkt. 51-1- at 69-70. Whether allegedly retaliatory conduct would "deter a person of ordinary firmness" from exercising his First Amendment rights is an objective test, *Douglas*, 964 F.3d at 646, and the standard "does not hinge on the personal experience of the plaintiff," *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020). This action is not sufficient to serve as a deprivation sufficient to deter a person from exercising their first amendment rights. Further, even if Mr. Phillips had entered protective custody, Mr. Phillips has not presented any

evidence that his prior court filings were a motivating factor for Officer Peters' recommendation that he do so. As such, summary judgment for Officer Peters as to claim 3 is **GRANTED**.

### E.  Claim 5: Personal Property Claim

Further, although Mr. Phillips alleges he suffered a deprivation pursuant to the second prong when his personal property was taken in July of 2022, he has similarly not proved that his court filings were the motivating factor for this seizure. "The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013). Nonetheless, "[a]llegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech." *Stagman v. Ryan*, 176 F.3d 986, 999–1000 (7th Cir. 1999).

Here, other than conclusory allegations, Mr. Phillips has not produced any evidence that the defendants' seizure was motivated by retaliatory animus. His arguments related to a larger conspiracy are mere speculation. *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (non- movant receives the "benefit of reasonable inferences from the evidence, but not speculative inferences in his favor" (cleaned up)). Perhaps, as Mr. Phillips argues in his response, there was evidence of animus during the preliminary injunction proceeding or the Court transcriptions that Mr. Phillips failed to include in his evidence. Perhaps this evidence was merely misdesignated in his more than 200 pages of evidence, but the Court's review of these pages has not been exhaustive. "Judges are not like pigs, hunting for truffles buried in" the

record. *Albrechtsen v. Bd. of Regents*, 309 F.3d 433, 436 (7th Cir. 2002) (*quoting United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *Self v. Bergh*, 835 F. App'x 873, 874, n.1 (7th Cir. Nov. 10, 2020) ("[D]istrict courts may strictly enforce their local rules against *pro se* litigants at summary judgment.") (citing *Cody v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006)). Mr. Phillips has failed to designate evidence for his case consistent with this Court's local rules, and the Court is not required to search for that evidence for him. No reasonable juror could find that Mr. Phillips property depravation was a violation the First Amendment, and summary judgment is **GRANTED** as to Bishop, Davis, Morados, Goodnight, Boldman, and Pfleeger.

### F.  Claims 6, 7, 9: Claims Relating to Copies, Unsafe Cell Assignments and Surveillance

For these claims, Mr. Phillips has vaguely alleged that various defendants violated his constitutional rights without providing any support or evidence to prove the second and third prong of his First Amendment retaliation claims. Courts have long recognized an inmate's right of meaningful access to courts, *see Bounds v. Smith*, 430 U.S. 817, 822–23 (1977); *Lehn v. Holmes*, 364 F.3d 862, 865–66 (7th Cir.2004), but that right is violated only when an inmate is deprived of access and suffers an injury as a result of the deprivation, *see Lewis v. Casey*, 518 U.S. 343, 349, (1996); *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir.2009). Although Mr. Phillips alleges general frustration that he was provided typo-riddled copies from Officer Goodnight, the evidence shows that did not specifically hinder his ability to pursue nonfrivolous litigation which is necessary to allege a depravation. *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (citing *Lewis*, 518 U.S. at 350; *Campbell v. Clarke*, 481 F.3d 967, 968 (7th Cir. 2007) (holding that a prisoner must allege that "a lack of access to legal materials has undermined," or caused to founder, "a concrete piece of litigation"); *Christopher v. Harbury*, 536 U.S. 403, 413–15 (2002). In fact, Mr. Phillips was still

able to successfully file over fifteen documents during the period in question. Dkt. 51-4 at 5-12. Summary judgment is **GRANTED** as to Claim 6 for Officer Goodnight.

His claims regarding unsafe cell assignments and surveillance also lack any specificity to survive summary judgment. Prison officials have a duty to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). They incur liability for the breach of that duty when they were "aware of a substantial risk of serious injury to [an inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (quoting *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)); *see also Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010).  But here, Mr. Phillips has generally alleged that an inmate threatened him with little reasoning as to why the defendants should have known that he would be harmed or how this isolated incident was retaliation for his court filings. Mr. Phillips does not even allege what about these assignments made them unsafe or what inmates exposed him to harm. His conclusory statements of a larger retaliatory conspiracy are not sufficient to prove his case. "Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough." *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) (cleaned up). Accordingly, summary judgment is **GRANTED** for Officer Smith in this claim.

Finally, a convicted prisoner, while in prison, has "no reasonable expectation of privacy in his prison cell..." *King v. McCarty*, 781 F.3d 889, 899 (7th Cir. 2015). Although the defendants contest that they surveilled Mr. Phillips within his personal cell, even if they did, simple surveillance does not rise to the level of a deprivation under the First Amendment. A "right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and

internal order." *Hudson*, 468 U.S. at 527-28. The defendants have established that the surveillance they conducted within PCF was for the purposes of security – which sufficiently establishes a non-retaliatory motive. Dkt. 51-9 at 3. Summary judgment for these claims must also be **GRANTED** for Edmonds, Cochran, Ruiz, Alecia, and Canfield.

### G. Claim 8: Fraudulent Property Charges

It is uncontested that Commissary Clerk Lyon had no access or involvement in the control, management or oversight of inmate trust accounts or inmate funds. Dkt. 51-8 at 2-3. Further, she had no power to make changes or modify Mr. Phillips' existing orders or submit the alleged fraudulent charges into his account. *Id.* A defendant can only be liable for the actions or omissions in which she personally participated. *Colbert*, 851 F.3d 649, 657 (7th Cir. 2017); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Mr. Phillips has failed to meet this burden. No reasonable juror could find that Commissary Clerk Lyons retaliated against Mr. Phillips in violation of the First Amendment because had no control over his trust account, and as such, summary judgment must be **GRANTED** in her favor.

### H. Claims 10 and 11: Conduct Violations and Determination of Guilt

Similar to the analysis for claims 1, 3 and 4, Mr. Phillips has not shown that his previous litigation was the motivating factor for the conduct violations he incurred from contraband and misconduct during his cell searches by defendants Edmonds, Cochran, Bishop, Shaw, Ruiz and Alecia.

First, as discussed above, routine cell searches are not an actionable deprivation because it is unlikely to deter an inmate of ordinary firmness from filing grievances. *Douglas*, 964 F.3d at

21

646; *West*, 679 F. App'x at 486 (7th Cir. 2017); *cf. Manuel*, 966 F.3d at 680 (noting that the parties agreed that "a deprivation in the form of a shakedown occurred that would likely deter future activity"). Further, Mr. Phillips has not proven that his previous case filings were the motivating factor for discipline stemming out of his possession of contraband and failure to comply to officer orders. In fact, of the three instances he articulates in his deposition as examples of fraudulent conduct violations, all three instances involved the possession of contraband that was investigated and supported through evidence in Mr. Phillips' subsequent disciplinary proceeding. Although Mr. Phillips believes this evidence may have been planted by officers, he was not present during the cell search and has presented no evidence to prove the contraband was placed fraudulently other than his conclusory allegations. No reasonable juror could find that Mr. Phillips previous filings were the motivating factor for his conduct violations. As such, summary judgment for Officers Edmonds, Cochran, Bishop, Shaw, Ruiz and Alecia is **GRANTED**.

Second, when an inmate brings a retaliation claim based on a disciplinary proceeding, the rule of *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) applies. Under *Mt. Healthy*, even if a plaintiff makes out a *prima facie* case of retaliation, a defendant may nonetheless be entitled to summary judgment if he can show, by a preponderance,[2] the same decision would have been reached anyway. *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011) (applying *Mt. Healthy* to a prisoner retaliation claim and holding even if a plaintiff satisfies his burden of establishing a *prima facie* case of retaliation, a defendant may nonetheless rebut such claim by showing the harm would have occurred anyway); *Babcock v. White*, 102 F.3d 267, 275

---

[2] This standard varies from circuit to circuit, *Watson v. Rozum*, 834 F.3d 417, 425 (3d Cir. 2016) (collecting cases), but the Seventh Circuit requires the Defendant show by a preponderance of the evidence that he would have taken the same action anyway. *See Greene*, 660 F.3d at 979 (citing *Mt. Healthy* for the preponderance standard).

(7th Cir. 1996) (same); *Winston v. Fuchs*, 837 F. App'x 402, 404 (7th Cir. 2020) (same); *see also Martin v. Duffy*, 977 F.3d 294, 301–02 (4th Cir. 2020) (collecting cases applying *Mt. Healthy* to prisoners' retaliation claims after being charged with misconduct).

The first two elements of Mr. Phillips' prima facie case with respect to his disciplinary charge claim are not disputed. Mr. Phillips engaged in protected activity by litigating against Warden Reagle, Captain Boldman, Lt. Pfleeger, and Property Room Manager Davis in the *Phillips v. Pendleton* Lawsuit, and a jury could find the disciplinary charge and subsequent adjudication was an adverse action as Mr. Phillips received multiple sanctions. *Douglas*, 964 F.3d at 646.

The key questions therefore are whether Mr. Phillips has adduced sufficient evidence of retaliatory animus for each Defendant, and if so, whether defendants can show by a preponderance that they would have taken the same action anyway. *Greene*, 660 F.3d at 979.

As to Disciplinary Hearing Officer Miller, summary judgment is appropriate because there is no evidence that his actions were motivated by animus to get back at Mr. Phillips for prior litigation. Mr. Phillips' only evidence is that he ignored video proof of Mr. Phillips' innocence before finding him guilty at a disciplinary hearing. Dkt. 51-1 at 26-28. There is no evidence that he made any comments demonstrating animus, nor is there any evidence she was aware that Mr. Phillips was engaged in ongoing litigation against other defendants. There is also no evidence (beyond speculation) that Warden Reagle or the other three defendants in Mr. Phillips' previous lawsuit somehow influenced Officer Miller's decision. The record reflects that Officer Miller reviewed the video evidence, prepared a written summary, and found no wrongdoing by officers as to one of Mr. Phillips' charges. Dkt. 51-5 at 64. The fact that he denied Mr. Phillips' appeal, and that IDOC's decision was later reversed in a habeas action is insufficient, without more, to demonstrate he retaliated against him. *See Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009)

("A single retaliatory charge that is later dismissed is insufficient to serve as the basis of a § 1983 action.").

The same conclusion can be reached as to the determinations Officer Miller made regarding Mr. Phillips' two contraband charges from October of 2022. Mr. Phillips asks this Court to find sufficient evidence of animus from the facts that Officer Miller failed to properly apply the G-House property policy to his disciplinary proceeding related to contraband. Dkt. 69-1, ¶ 8. This assertion, without more, does not raise an inference of animus. Further, although Disciplinary Hearing Officer McDonald was involved in some of Mr. Phillips' fifteen disciplinary proceedings and discussed vaguely in his deposition, Mr. Phillips does not allege any specific wrongdoing or evidence of animus in any specific disciplinary charge on behalf of this hearing officer other than his repeated conclusions of a broad conspiracy. This assertion is too speculative to preclude summary judgment. *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013). Without any additional evidence, Mr. Phillips cannot carry his burden, and so defendants' motion for summary judgment with respect to Disciplinary Hearing Officer Miller and McDonald is **granted**.

### I.   Claim 12: Chemical Spray Claims

Simply put, Mr. Phillips has designated no evidence to support his contention that his cell was sprayed with harmful chemicals as a retaliatory act by the defendants. His deposition testimony was vague. He could not identify what chemicals were specifically sprayed or which officers were involved. He did not articulate which other inmates were involved in the allegedly harmful spraying or how this was an act to specifically retaliate against him. Vague allegations, without evidentiary support, cannot create a triable issue of fact. As the Seventh Circuit has made clear, "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."

*Diadenko v. Folino*, 741 F.3d 751, 757-58 (7th Cir. 2013) (quoting *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)). Defendants have proffered that diluted germicide solution and bleach were sprayed throughout the facility for general sanitation purposes. Dkt. 51-9 at 2. This is sufficient to allege a non-retaliatory motive for the chemical spray within PCF. Based on the summary judgment record, Mr. Phillips has failed to meet his burden to show that the chemical spray was a significant deprivation to deter First Amendment activity. Summary judgment is **GRANTED** as to this claim for the defendants.

### J. Claims 13, 14, and 15: Grievance and PREA Claims

For Mr. Phillips' claim related to preservation of video evidence, the uncontested record supports that the defendants attempted to preserve all video evidence that Mr. Phillips requested in a timely manner. Although Mr. Phillips stated in an August 2022 grievance, "Please view camera footage… and you'll see what I'm saying is factual and true," he did not actually request any video footage until months later in November. Dkt. 51-10 at 24. When he finally requested this footage, Warden Reagle responded noted that Wargny had saved the December footage but the July footage he requested was no longer available. *Id.* Because the defendants diligently preserved all the records Mr. Phillips requested, no reasonable juror could find that Mr. Phillips suffered a depravation intended to deter him from further litigation. Accordingly, summary judgment is **GRANTED** as to Warden Reagle and Grievance Specialist Conyers for this claim.

Finally, Mr. Phillips does not have a right to grievance responses or specific investigative outcomes, and accordingly, summary judgment must be granted for claims arising out of Mr. Phillips retaliation claims related to grievances and staffs' responses because their inaction or alleged delay does not rise to a depravation. The PLRA's exhaustion requirement does not create a freestanding right under federal law to access the administrative remedy process. The Seventh

Circuit has "specifically denounc[ed] a Fourteenth Amendment substantive due process right to an inmate grievance procedure." *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008). "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Grieveson v. Anderson*, 538 F.3d 763, 772 & n. 3 (7th Cir. 2008); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)).

As explained in *Antonelli v. Sheahan*, "any right to a grievance procedure is a procedural right, not a substantive one. Accordingly, a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." 81 F.3d at 1430-31(internal citations omitted). Because Mr. Phillips had no expectation of a particular outcome of his grievances or PREA complaints, there is no viable depravation which can be vindicated through 42 U.S.C. § 1983. *Juriss v. McGowan*, 957 F.2d 345, 349 n.1 (7th Cir. 1992) (without a predicate constitutional violation one cannot make out a prima facie case under § 1983). Summary judgment is **GRANTED** as to Conyers, Wargny, and Watson for all claims arising out of Mr. Phillips' allegations of their failure to respond and investigate his grievances.

## IV.
## Motion to Strike Surreply and Motion to take Notice

On July 17, 2024, Mr. Phillips filed a surreply. Dkt. 71. Defendants now move to strike said surreply because it advances arguments beyond the scope of Defendants' reply. *See* S.D. Ind. L.R. 56-d ("[A surreply] must be limited to the new evidence and objections [in the reply]."); *GEFT Outdoor, L.L.C. v. City of Westfield*, 491 F.Supp.3d 387, 396 (S.D. Ind. 2020) ("Courts allow a surreply brief only in limited circumstances to address new arguments or evidence raised in the reply brief or objections to the admissibility of the evidence cited in the response.") (citations

omitted). Upon consideration of Defendants' motion, the Court agrees. Defendants' motion to strike, dkt. [74], is therefore **GRANTED**. Mr. Phillips' surreply, dkt. 71, is **stricken** from the record in its entirety.

Mr. Phillips' motion of notice of relevant information, dkt. 76, is **GRANTED** to the extent that the Court has reviewed his filing when making the determination in this order.

## V.
## Rule 56(f) Notice

Defendants have titled their motion as a 'partial' motion for summary judgment. It is unclear, however, what if any of Mr. Phillips' claims remain—Defendants' motion and supporting memorandum said nothing about what claims they were not seeking summary judgment on.

Regardless, the record currently before the Court shows that Defendants are entitled to summary judgment on all of Mr. Phillips' claims. Therefore, the Court gives the parties notice of its intent to grant summary judgment in Defendants' favor on all claims. *See* Fed. R. Civ. P. 56(f)(1) The parties shall have until **14 days after the issuance of this order** to show cause why summary judgment should not be granted as to all claims based on the parties' briefing. Alternatively, Defendants may respond with a statement clarifying which issues remain in this case.

## VI.
## Conclusion

Defendants' motion to strike, dkt. [74], is **GRANTED**. The **clerk is directed to** strike Mr. Phillips' surreply, dkt. [71], from the record in its entirety.

Mr. Phillips' motion of notice of relevant information, dkt. [76], is **GRANTED** to the extent that the Court has reviewed his filing when making the determination in this order.

Defendants' motion for summary judgment, dkt. [50] is **GRANTED** as to all claims identified in their briefing, which the Court understands to be all claims in this case despite Defendants' titling their motion as a "partial" motion for summary judgment. The parties have **14 days after the issuance of this order** to show cause why summary judgment should not be granted in full and final judgment entered. Alternatively, Defendants may respond with a statement clarifying which issues remain in this case. If there are no other identified claims at that time, final judgment will issue in a separate entry.

**IT IS SO ORDERED.**

Date:  2/27/2025

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAMES E. PHILLIPS
106333
WABASH VALLEY - CF
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
CARLISLE, IN 47838

All Electronically Registered Counsel